# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE DAY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>INLAND SBA MANAGEMENT )<br>CORPORATION, an Illinois corporation, and )<br>SOMERCOR 504, INC., an Illinois corporation, )<br>    Defendants. ) | Case No. 11-cv-6201<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Stephanie Day, ("Day") filed a six-count complaint against defendants Inland SBA Management Corporation ("Inland") and SomerCor 504, Inc. ("SomerCor") alleging violations of the Civil Rights Act of 1871, 42 U.S.C. § 1981, Title VII, 42 U.S.C. § 2000(e)(2)(a)(1), the Illinois Whistle Blower Act, 750 ILCS 174/15, and a claim for breach of contract. Defendants Inland and SomerCor move for summary judgment on all Day's claims. For the following reasons, the defendants' motions are granted and Day's complaint is dismissed in its entirety.

**Background**

SomerCor is a not-for-profit corporation, licensed by the federal government to place and service loans through the federally funded Small Business Administration program. (Dkt. 122 at ¶ 2). SomerCor contracted with Inland to provide personnel and human resources services. (Dkt. 135 at ¶ 6). From October 2008 through January 2011, Day, an African-American woman, was employed as the Senior Vice President of the Servicing Department of SomerCor. (Dkt. 135 at ¶ 1). Day reported directly to the president of Inland, Mickey Maslic ("Maslic"), and the Executive Vice President of SomerCor, David Frank ("Frank").

As part of her employment contract, Day was to get a second year bonus. Day anticipated and estimated that her bonus would be $50,000; however, the parties' agreement never specified the exact amount of her bonus. (Dkt. 123 at ¶ 22). The parties' agreement, memorialized in an email exchange, merely provides that Day's second year bonus was to be calculated from whatever remained from the department's budget after her salary, and the salary of anyone else in her department was deducted. (Dkt. 122 ¶ 14). Neither Day nor the defendants

1

provide any evidence as to the actual numbers used to calculate Day's bonus (for example, what her second year salary was or what the salaries of others in the department totaled).

In October 2009, Day received her first performance evaluation from Maslic and Frank. The review stated that she needed to ensure that customers were treated with the best available options and that her supervisors believed that there were better ways to approach problem loans. (Dkt. 135 at ¶ 23). Although Day states that she did not receive any written discipline related to customer complaints until November 12, 2010, (Dkt. 122 at ¶ 24, 36), it can be inferred from her performance review that customer service needed adjustments. Nor does it necessarily follow that no such customer complaints were made just because Day was not informed of such complaints until November 2010. Maslic and Frank testified that numerous customer complaints were made concerning Day in late 2009. (Maslic Dep. 99-101, Frank Dep. 86-94). Specifically, Frank testified to complaints he received by John Hunt, a community banker from Rolling Meadows, who complained that Day was not helpful and that she refused to offer any guidance regarding his loan. (Frank Dep. 86:7-87:12). Additionally, Frank testified to receiving complaints from Ted Strack who complained that he had become exasperated with dealing with Day and would rather pay off his loans directly. (Fran Dep. 93:13-94:11). Day states that when such customer complaints were eventually brought to her attention she did everything in her power to address the complaints with the client and her team. (Dkt. 122 at 37).

Day met with Maslic and Frank to discuss her second year performance evaluation in October 2010. Following that meeting Maslic and Frank gave Day her second written performance evaluation in which they noted that improvement was needed with regards to Day's customer service and client relationships. The performance evaluation listed that Day needed to improve in areas such as inclusiveness (promoting cooperation and understanding the perspectives of others) and communication (connecting with peers and customers). (Dkt. 135 at ¶ 38). On November 30, 2010, Maslic and Frank gave Day a written warning that refusals to service customers' needs may lead to further discipline. (Dkt. 135 at ¶ 46). On December 13, 2010 Day filed an EEOC Charge against the defendants alleging race and sex discrimination. Day states that she had previously verbally complained of racial discrimination on October 14, 2010. (Dkt. 134 at 6). On January 27, 2011 Maslic and Frank terminated Day's employment. (Dkt. 135 at ¶ 62).

The defendants contend that Day was terminated because of customer complaints and the rude manner in which she communicated with clients. Day argues that she was terminated for refusing to approve a loan that she believed was improper and because of her race and sex.

**Legal Standard**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). To determine whether any genuine issue of fact exists, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

**Discussion**

*1. Counts I-III: Race & Gender Discrimination*

Defendants Inland and SomerCor move for summary judgment on Day's racial and sex discrimination claims (Counts I-III). Inland and SomerCor argue that Day fails to provide any facts in support of her discrimination claims outside of her own conclusory, unsupported allegations. The defendants contend that Day was terminated because she failed to meet her employer's legitimate employment expectations. Day argues that she is able to establish her claims under both the direct and indirect methods of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Day alleges that Inland discriminated against her based on race and gender by subjecting her to more stringent terms and conditions of employment, excluding her from management meetings, denying her a promised bonus, and speaking to her in an offensive and racially biased manner in violation of Title VII and 42 U.S.C. § 1981. (Compl. at 13). Day may establish discrimination under Title VII and 42 U.S.C. § 1981 by either the direct or indirect method. *Silverman v. Board of Educ. of the City of Chic.*, 637 F.3d 729, 733 (7th Cir. 2011). Under the direct method, the court considers direct and circumstantial evidence of discrimination. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Direct evidence is rare because it "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Hossark v. Floor Covering Ass'n of Joliet, Inc.*, 492 F.3d 853, 861 (7th Cir.

2007). Accordingly, most cases are usually proven by circumstantial evidence. Circumstantial evidence need not directly demonstrate discriminatory intent, but allows a jury to infer discrimination by the decision maker for suspicious words or action. *Id*. at 862.

Under the direct approach, Day has failed to proffer sufficient evidence to support her contention that the defendants discriminated against her because of her race and gender. In support of her discrimination claims, Day first relies on emails exchanged between her supervisors, Maslic and Frank, in which they expressed their dislike of Day's personality, listing her as one of the "Top 5 Most Annoying SomerCor Personalities." These email exchanges also contained statements about "intentional digs" towards Day. While it is unclear the content of these "digs" or what, if any, statements were made to Day directly, Day merely presents circumstantial evidence supporting the fact that she was disliked by her supervisors or peers. However, "all dislike is not based on race." *Shackelford v. Roadway Express*, No. 02 C 1167, 2003 U.S. Dist. LEXIS 2091,a t *15 (N.D. Ill. Feb. 11, 2003) (citing *Pilditch v. Board of Educ. of City of Chicago*, 3 F.3d 1113, 1119 (7th Cir. 1993)). Day presents no evidence that she was treated differently because of her race or sex, but merely proffers evidence that she did not get along well with her supervisors.

Day also references a diversity project she completed for one of her management classes as circumstantial evidence of discrimination. Day contends that Frank indicated in his interview for her project that he believed in white male supremacy. (Pl. Rule 56 ¶ 52). Upon review of Day's report, there is nothing in the report which supports Day's contention. (Dkt. 123, Ex. Q). For her report, Day questioned employees regarding their perceptions of how diverse SomerCor was, their beliefs about white male privilege in the company and society as whole, perceived deficiencies in SomerCor's diversity efforts, and suggested improvements that could be made to promote more diversity. (Dkt. 123, Ex. Q). Outside of Day's deposition testimony in which she claims that Frank professed a belief in white male supremacy, there is no support in the record for Day's contention. Day similarly relies on her personal belief that she was hired to terminate her predecessor, Crystal Howard, as evidence that the defendants had a history of terminating employees because of race and gender bias. Again, Day's claim that Howard was terminated for discriminatory reasons is unsupported by the record outside of Day's own conclusory remarks in her deposition. These "conclusory allegations . . . without support in the record, do not create a triable issue of fact." *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 812 (7th Cir. 2011).

4

Furthermore, it strains credulity that Maslic and Frank, would hire Day, a member of the group they were alleged to discriminate against, in order to perpetuate clandestine discrimination against Howard, another African-American woman. It also defies logic that Maslic and Frank would then terminate Day themselves for the same discriminatory reasons they hired Day to terminate Howard without again attempting to cover up their discriminatory intent.

Additionally, Day fails to provide any evidence in support of her allegations that she was subjected to more stringent terms and conditions of employment, excluded from management meetings, denied a promised bonus, or spoken to in an offensive and racially biased manner. Day references defendant SomerCor's Rule 56 Statement ¶ 87 which merely repeats Day's allegation that she was excluded from management, budget, and strategy meetings, and states that when Day was asked to attend a particular budget meeting she declined. (Dkt. 90, at ¶87). In support of her contention that the defendants made inappropriate comments about her race and gender Day cites to her allegation that Frank believed in white supremacy, the email exchanges between Maslic and Frank, and a letter by Frank to a lawyer in which he stated that her claims were "off the wall, ludicrous, [and] absurd BS." None of the evidence cited by Day supports her contentions of race and gender discrimination. At most these references support the fact that Day may have been disliked and disrespected by her supervisors, but do not support an inference of discriminatory intent.

Day also argues that she states a claim under the indirect method of proof. Under the indirect method of proof, Day must show that (1) she is a member of a protected class; (2) she was meeting Inland and SomerCor's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably. *Naficy v. Ill. Dep't. of Human Servs.*, 697 F.3d 504, 511 (7th Cir. 2012). If Day establishes a prima facie case, the defendants must present evidence showing a legitimate, nondiscriminatory reason for the employment action. *Id*. Day must then present evidence showing that the defendants' stated reasons are pretextual. *Id*. at 511-12.

First, Day fails to make a prima facie case of discrimination because she fails to demonstrate that similarly situated employees outside of her protected class were treated more favorably. In order to show that an employee was similarly situated, Day must demonstrate that he or she "(1) dealt with the same supervisor, (2) [was] subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would

5

distinguish [his or her] conduct or the employer's treatment of [him or her]." *Carter v. Thompson Hotels*, 2013 U.S. Dist. LEXIS 63305 (N.D. Ill. May 3, 2013).

Here, Day identifies a Caucasian female, Debra Morack, who was originally assigned to a file that was eventually transferred to Day. Day argues that she was terminated because of her denial of a loan on that file, but that Morack was not terminated even though she made the same recommendation not to approve the loan. Day proffers no evidence demonstrating that Morack received client complaints or was considered rude or terse in her communications with clients. When analyzing whether an individual is similarly situated with a plaintiff, courts look to whether co-workers "engaged in comparable rule or policy violations' and received more lenient discipline." *Coleman v. Donahoe*, 667 F.3d 835, 850 (7th Cir. Ill. 2012) (internal quotation marks omitted). "[T]he critical question is whether [the employees] have engaged in conduct of comparable seriousness." *Id.* at 851 (internal quotation marks omitted). Day proffers no evidence to suggest that there were non-African-American female employees who were not terminated despite receiving customer complaints.

Furthermore, even if Day could make out a prima facie case of discrimination, she cannot overcome her additional burden of proving that the defendant's reason for the termination is pretextual, or, in other words, a "deliberate falsehood." *See Malone v. Am. Friends Serv. Comm.*, No. 06-2736, 213 F. App'x 490, 494 (7th Cir. 2007). Day argues that because she was not notified of customer complaints until late 2010, such complaints were a pretext for her termination. Day does not deny that customer complaints may have existed prior to her being informed of them. The issue when determining pretext is whether the defendant's proffered non-discriminatory reason for termination is the actual basis of the employer's action. *See id*. Because there is no evidence that customer complaints were not the true ground of Day's termination, Day's pretext argument would fail.

It is important to note that the Seventh Circuit has held, ". . . when an employee is hired and fired by the same decision-maker in a relatively short time span, a presumption, or inference, of nondiscrimination arises." *See Phelan v. City of Chicago*, 226 F. Supp. 2d 914, 929 (N.D. Ill. 2002) (citing *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 399 (7th Cir. 1997)). In *Chiaramonte*, the Seventh Circuit reasoned further that "[i]t is highly doubtful that a person who hires an employee in the protected age group . . . would fire that same employee . . . as a result of a sudden aversion to older people." *Chiaramonte*, 129 F.3d at 399. Similarly, here, it is highly

6

doubtful that Maslic and Frank, who according to Day had an aversion to African-American women, would choose to hire Day, a member of the very group Maslic and Frank allegedly had an aversion towards and discriminated against. Accordingly, Day fails to make out a prima facie case of discrimination under both the direct and indirect methods of proof and fails to proffer evidence that the defendants' reasons for terminating her employment were pretextual. Counts I-III are dismissed.

*2. Count IV: Retaliation*

Similarly, Inland argues that Day fails to establish retaliation using either the direct or indirect methods of proof because she fails to demonstrate a causal connection between her filing of an administrative complaint and her termination. Day claims that the defendants retaliated against her in violation Title VII by terminating her and refusing to give her a bonus after she internally complained on October 14, 2010 and filed a complaint with the EEOC on December 8, 2010. A plaintiff suing for retaliation can proceed using either the direct or indirect method of proof. *Roundtree v. Instrument & Valve Servs. Co.*, No. 11 C 7580, 2013 U.S. Dist. LEXIS 129094, at *7 (N.D. Ill. Sept. 10, 2013). In order to establish a Title VII retaliation claim under the direct method a plaintiff must offer evidence that (1) she engaged in a protected activity; (2) she was subject to an adverse employment action; and (3) there was a causal link between the protected activity and the employment action. *Id*. The Supreme Court has held that Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action. *See University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 186 L. Ed. 2d 503 (June 24, 2013).

Day's retaliation claim fails because she cannot establish that her filing an EEOC charge was the but-for cause of her termination. The record is void of any direct evidence of causation. Additionally, Day cannot survive summary judgment under the indirect method. Once again, as discussed previously, Day fails to offer any evidence she was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity and therefore fails to establish a prima facie case. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Accordingly, Day's retaliation claim is dismissed.

*3. Count V & VI: Illinois Whistleblowing Act & Breach of Contract State Law Claims*

Having dismissed all of Day's federal claims, this Court ultimately has discretion over whether to exercise supplemental jurisdiction over Day's state law claims. *Carlsbad Tech., Inc.*

*v. HIF BIO, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866, 173 L. Ed. 2d 843 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). This Court declines to exercise jurisdiction over Day's state law claims.

Nonetheless, this Court notes that even if it were to exercise jurisdiction over Day's claims, her state law claims would be dismissed. The Illinois Whistleblower Act provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation." 740 ILCS 174/20. In order to sustain a cause of action under the Act, Day must establish that (1) she refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) Inland and SomerCor retaliated against her because of that refusal. *See Nelson v. Levy Home Ent''t, LLC*, 2012 U.S. Dist. LEXIS 15320, 21-22 (N.D. Ill. Feb. 8, 2012) (citing *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 61, 948 N.E.2d 652, 656-57, 350 Ill. Dec. 372 (2011)). A Whistleblower Act claim requires the plaintiff to show that refusal to participate in an illegal activity caused her employer to retaliate against her. *See Nelson v. Levy Home Ent''t, LLC*, No. 10 C 3954, 2012 U.S. Dist. LEXIS 15320, at *21-22 (N.D. Ill. Feb. 8, 2012). Here, Day fails to demonstrate that her failure to approve a loan caused Inland and SomerCor to retaliate against her. The loan which Day refused to approve was investigated by the Office of Credit Risk Management and no fraud or illegality was found. Additionally, for reasons previously discussed, Day fails to proffer any evidence of discriminatory intent.

As to Day's breach of contract claim Day fails to proffer any evidence that she was in fact due a $50,000 bonus. The contact outlining Day's second year bonus merely provides an equation by which her bonus would be calculated. The contract does not specify that Day was due $50,000 specifically. The only evidence proffered by Day in support of this amount is her own email stating that she anticipated and expected her bonus to amount to $50,000. This was not a specific provision of the contract, nor does Day proffer any evidence that the calculation as provided by the contract would have resulted in such an amount. Additionally, Maslic and Frank were not opposed to giving Day a bonus altogether. She was offered a lower bonus and refused to accept anything less than $50,000, although her contract did not provide that she would receive $50,000. (Dkt. 135 at ¶ 34). Accordingly, Day offers no evidence that there was a breach of the parties' agreement. Day's state law claims are therefore dismissed.

**Conclusion**

For the foregoing reasons, the defendants' motions for summary judgment are granted. Day's complaint is dismissed in its entirety.

IT IS SO ORDERED.

Date: September 18, 2013

Sharon Johnson Coleman
United States District Judge